## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
## OXFORD DIVISION

**OKESHA MOORE**                                                                                  **PLAINTIFF**

**V.**                                                                          **NO: 3:20CV161-MPM-JMV**

**ANDREW M. SAUL**
**COMMISSIONER OF SOCIAL**
**SECURITY**                                                                           **DEFENDANT**

### ORDER ADOPTING REPORT AND RECOMMENDATION

On consideration of the file and record of this action, the Court finds that the Report and Recommendation ("R&R") of United States Magistrate Judge Jane Virden [22], dated June 7, 2021, is due to be adopted.

### Procedural Background

The R&R was entered on June 7, 2021, and on July 6, 2021, Defendant Andrew M. Saul, the Commissioner of Social Security ("Commissioner") filed Objections to the Magistrate's R&R. [29]. Plaintiff Okesha Moore ("Moore") filed a response to the objections on July 16, 2021. [31] The Court has considered the R&R, the objections, and the response, and concludes the Commissioner's decision is reversed and remanded for further proceedings in accordance with the R&R.

### Standard of Review

Where objections to a report and recommendation have been filed, a court must conduct a "de novo review of those portions of the ... report and recommendation to which the [parties] specifically raised objections. With respect to those portions of the report and recommendation to which no objections were raised, the Court need only satisfy itself that there is no plain error on the face of the record." *Gauthier v. Union Pac. R.R. Co.*, 644 F. Supp. 2d 824, 828 (E.D. Tex.

2009) (citing *Douglass v. United Serv. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996)).

## Discussion

The Commissioner made two objections to the Magistrate Judge's Report and Recommendation. The first objection challenges the Magistrate Judge's finding that the ALJ was not permitted to formulate Moore's residual functional capacity (RFC) based upon raw medical data without an updated assessment from a physician. The second objection challenges the Magistrate Judge's finding that Dr. James' report was not persuasive. The court will conduct a de novo review of each of these portions of the R&R before "satisfying itself" that there is no plain error with respect to the other portions of the record to which no objection was made. *See Id.*

**I. ALJ's Ability to Interpret Raw Medical Data**

The first objection made by the Commissioner is that the Magistrate Judge improperly found that the ALJ may not legally assess a claimant's RFC based upon "raw medical data" without basing such a finding on evidence from a medical source. The Commissioner relies on two arguments to support this objection. The first is that the holding would require the ALJ to defer to medical opinion evidence, which would violate the Commissioner's revised regulatory framework and would amount to a failure to accord the regulation *Chevron* deference. The second is that the ALJ is allowed to interpret "raw medical data" in determining a claimant's RFC.

The Commissioner argues that the Magistrate Judge's holding would amount to a failure to accord the agency's regulations *Chevron* deference. *See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842-44 (1984). 20 C.F.R. § 416.920c(a)(1) is the regulation at issue in this case. It bars the ALJ from deferring or giving any specific evidentiary weight to any medical opinion. The Commissioner argues that by remanding the case for an updated medical source statement regarding Moore's physical RFC, the Magistrate Judge is requiring the ALJ to defer to

medical opinion evidence in violation of the 20 C.F.R. § 416.920c(a)(1). However, the Magistrate Judge's holding makes no such requirement. Instead, the holding merely requires "an updated medical source statement regarding the claimant's physical RFC and, ultimately, a new decision." The holding does not require the ALJ to give any specific evidentiary weight to that medical statement or to defer to it. The standard remains that "an ALJ has considerable discretion in assigning weight to medical opinions and may reject the opinion of any physician when the evidence supports a contrary conclusion." *Martinez v. Charter*, 64 F.3d 172, 176 (5th Cir. 1995). The purpose of the holding is simply to ensure that a medical expert determines what, if any, impact the medical developments after the initial RFC determination by Dr. James had on Moore's ability to work. The ALJ remains free to reject such an opinion in whole or in part if the evidence supports the ALJ's contrary conclusion.

Next, the Commissioner argues that the Magistrate Judge's holding improperly asserts that the ALJ may not interpret "raw medical data." In making this argument, the Commissioner relies on several decisions from the 5th Circuit, all of which are readily distinguishable from Moore's case. Each of the cases cited by the Commissioner involves an ALJ's interpretation of objective medical evidence. Meanwhile, Moore's case involves raw medical evidence. By objective medical evidence, this court is referring to medical evidence where the extent of functional loss and its effects on job performance would be apparent even to a lay person. *See Minor v.* Astrue, No. 1:13cv17-HSO-RHW, 2014 WL 936438, at *6 (S.D. Miss. March 10, 2014) (citing *Gordils v. Sect'y of Health and Human Servs.*, 921 F.2d 327, 329 (1st Cir. 1990)). And by "raw medical evidence," this court is referring to evidence that does not permit "common-sense judgments about functional capacity" and instead requires the ALJ to "overstep the bounds of a lay person's competence and render a medical judgment." *Id.* Looking at Moore's medical developments that

occurred after Dr James' June 2017 report, it is clear the evidence does not permit "common-sense judgements about functional capacity." *Id.* A lay person would not readily understand how medical notations about disc bulging and "moderate facet degenerative changes" impact one's ability to work. [31] Likewise, not even Dr. James has determined how Moore's documented history of knee pain may further limit her ability to work. Meanwhile, a medical expert would be able to sift through these notations and records to determine what, if any, impact they might have on Moore's ability to work. The need for a medical opinion, as ordered by the Magistrate Judge, finds strong support from 5th Circuit precedent despite the Commissioner's arguments to the contrary.

The Commissioner cites *Taylor v. Astrue* for the assertion that "what [claimant] characterizes as the ALJ substituting his opinion is actually the ALJ properly interpreting the medical evidence to determine his capacity for work." *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012). In *Taylor*, the claimant took issue with the ALJ discounting the opinions of "medical personnel who have treated Taylor since the onset of his pain." *Id.* Unlike the present case, in which there is no medical opinion on the impact of Moore's subsequent medical developments, *Taylor* had medical experts who opined on each of the claimant's issues and their impact on the claimant's capacity for work. *See id.* The claimant's primary issue with the ALJ's decision in *Taylor* was that the ALJ discounted medical opinion favorable to the claimant. *See id.* And, as this Court has stated, the ALJ is free to discount or reject medical opinion given that there is sufficient evidence in the record to support the ALJ's conclusion. But in the present case, there is no medical opinion on Moore's MRI or her medical developments following Dr. James' medical opinion.

The Commissioner also references *Fontenot v. Colvin* for its assertion that the ALJ may properly interpret medical evidence. *See Fontenot v. Colvin*, 661 F. App'x 274, 277 (5th Cir. 2016). Again, however, the facts show that case is markedly different from Moore's case. In *Fontenot*,

"the ALJ relied on reports and analysis from two consultative examiners and the review physician in making her determination." *Id.* "Further, the ALJ adequately dealt with a dispute between physicians." *Id.* The ALJ in that case did not seek to take raw medical data and turn it into a functional analysis of the work the claimant could do. Instead, the ALJ merely interpreted and weighed the persuasive value of medical expert opinion.

Similar distinctions can be found in the other two cases cited by the Commissioner, *Barrett v. Berryhill* and *Joseph-Jack v. Barnhart*. The Commissioner uses *Barrett* for its assertion that "experienced ALJs can draw their own conclusions based on accurate medical information." *Barrett v. Berryhill*, 906 F.3d 340 (5th Cir. 2018). The Commissioner also points to the court's finding that the ALJ may determine "different functional limitations than the state agency medical consultant because the ALJ was permitted to draw his own conclusion regarding the functional limitations resulting from the objective medical information." *Id.* However, the Commissioner incorrectly extends these findings to support the argument that an ALJ may interpret raw medical data. Though the decision in *Barrett* supports the ALJ's ability to reasonably depart from the conclusions of the medical experts by using objective medical evidence, it does not support the Commissioner's conclusion that an ALJ may interpret raw medical data. Again, objective medical evidence is wholly different from interpreting raw medical data.

Lastly, the Commissioner uses *Joseph-Jack v. Barnhart*, a case in which the 5th Circuit upheld the decision an ALJ made without an RFC from a medical source, to dispute the need for a medical opinion on Moore's subsequent medical developments as ordered by the Magistrate Judge. *See Joseph-Jack v. Barnhart*, 80 F. App'x 317 (5th Cir. 2003). The Commissioner argues that by upholding the ALJ's decision, "the Fifth Circuit held that an ALJ can create an RFC without a medical opinion at all." [29] This misstates the 5th Circuit's holding in that case. In *Joseph-Jack*,

the ALJ relied on state medical consultants who had reviewed the claimant's medical evidence and determined that the claimant was not disabled. *See Joseph Jack*, 80 F. App'x at 318. The ALJ created the RFC but did so relying heavily on the opinions of medical experts. *Id.*

None of the 5th Circuit cases cited by the Commissioner support the argument that an ALJ may craft an RFC without medical expert opinion in matters involving raw medical evidence. Instead, each of the cases cited involved a medical opinion on the medical evidence in the record. And while the ALJ is permitted to deviate from those medical opinions, he may do so only if objective medical evidence supports that conclusion. *Martinez*, 64 F.3d at 176. Moore's case, on the other hand, involves many developments in the form of an MRI, subsequent pain, and treatment for her back and knee that have not been considered by any medical experts. Without a medical expert's input, the ALJ was not permitted to draw his own medical conclusion from that data. *See Frank v. Barnhart*, 326 F.3d 618, 621-22 (5th Cir. 2003). Though the Commissioner's findings on these matters are accorded high deference under the "substantial evidence" standard, *See* 42 U.S.C. § 405(g); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), "playing doctor" and interpreting "raw medical evidence" involves judging matters entrusted to experts, and "the ALJ's findings are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

## II. Persuasiveness of Dr. James' Report

The second objection by the Commissioner is that the Magistrate Judge improperly found that Dr. James' RFC was not persuasive. In the Report and Recommendation, the Magistrate Judge found that "the ALJ's conclusion that Dr. James' opinion was persuasive was erroneous. Consequently, the ALJ's determination that Moore could perform the full range of light work… is not supported by substantial evidence in the record." The Commissioner argues that the Magistrate

Judge failed to accord the ALJ's conclusion on this "factual determination" the proper substantial evidence deference. This argument lacks merit. The Magistrate Judge did not take issue with the persuasiveness of Dr James' opinion in relation to the facts and evidence Dr. James reviewed and assessed. Rather, the Magistrate Judge took issue with the use of Dr. James' opinion to support a determination that "the claimant could perform the full range of light work." The Report and Recommendation merely asserts that Dr. James' opinion, because it did not take into account the subsequent medical developments, cannot be the sole medical opinion source for the ALJ's final conclusion. The persuasive value of Dr. James' report extends only to the evidence he reviewed and analyzed. It does not extend to the entire medical record of Moore and thus cannot, on its own, support the ALJ's findings. Specifically, Dr. James' report does not address Moore's knee pain, her October 2017 MRI, or any of the other subsequent medical developments reported by Moore. The Magistrate Judge's analysis did not substitute her judgment for the Commissioner's, and she properly determined that substantial evidence does not support the ALJ's findings.

## Remainder of Report and Recommendation

The Court has reviewed the remaining portions of the R&R to which no objections were filed and finds no plain error on the face of the record.

## Conclusion

After reviewing the record, the R&R, defendant's objections, and relevant law, the Court finds that the objections to the R&R are **OVERRULED**, the Plaintiff's Motion for Extension of Time to File is **MOOT**, and the R&R is **APPROVED** and **ADOPTED** as the opinion of the Court. The Commissioner's decision is **REVERSED** and **REMANDED** for further proceedings in accordance with the R&R.

**SO ORDERED**, this 31st day of March, 2022.

/s/ Michael P. Mills
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF MISSISSIPPI**